IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO.   07 CR 716 |
| | ) | |
| DONALD J. MCGUIRE, | ) | Honorable Arlander Keys, |
| | ) | Magistrate Judge, Presiding |
| Defendant. | ) | |

MEMORANDUM IN SUPPORT OF MOTION
FOR DISCLOSURE OF IMPEACHING INFORMATION

**I.**

INTRODUCTION

The Defendant is moving for disclosure of "impeaching information". This raises the questions: Why must the government disclose; when must the disclosure occur; and, what must be disclosed?

A.   The Duty of Disclosure

To begin with, due process requires that the government not suppress evidence favorable to the accused or discrediting to its own case, and, upon request, that it disclose to the defense all such information. Brady v. Maryland, 373 U.S. 83 (1963); United States v. Agurs, 427 U.S. 97 (1976), See also, Mooney v. Holohan, 294 U.S. 103 (1935); Pyle v. Kansas, 317 U.S. 213 (1942). This requirement of candor by the sovereign encompasses information which bears upon the credibility of its witnesses as well as matters more directly material to guilt or innocence. Napue v. Illinois, 360 U.S. 264 (1959); Giglio v. United States, 405 U.S. 150 (1972). See generally, Williams v. Dutton, 400 F.2d 797 (5th Cir. 1968), cert. denied, 393 U.S. 1105 (1969). As stated by the Supreme

Court in <u>Napue v. Illinois</u>, <u>supra</u>, 360 U.S. at 269:

> The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

Moreover, in this federal prosecution the Court's supervisory power to safeguard "the correct administration of justice in the federal courts" reinforces the due process requirement of disclosure. <u>E.G.</u>, <u>United States v. Consolidated Laundries Corp.</u>, 291 F.2d 563, 571 (2d Cir. 1961); <u>United States v. Miller</u>, 411 F.2d 825, 832 (2d Cir. 1969); <u>United States v. Leja</u>, 568 F.2d 493, 499 (6th Cir. 1977). <u>See</u> generally, <u>Communist Party of the United States v. S.A.C.B.</u>, 351 U.S. 115, 124 (1956).

      B.    <u>Pre-trial Disclosure Should be Granted</u>

Secondly, disclosure of information impeaching witnesses' credibility must be timed to enable effective <u>preparation</u> for trial. <u>E.G.</u>, <u>United States v. Polisi</u>, 416 F.2d 573, 578 (2d Cir. 1969); <u>see</u> <u>United States v. Kaplan</u>, 554 F.2d 577, 580 (3d Cir. 1977); <u>United States v. Baxter</u>, 492 F.2d 150, 173-174 (9th Cir. 1973), <u>cert</u>. <u>denied</u>, 416 U.S. 940 (1974). <u>cf</u>., <u>United States v. Opager</u>, 589 F.2d 799, 804-05 (5th Cir. 1979) (crucial importance to accused of pre-trial interviewing and/or investigation of potential witnesses). As pointed out in <u>United States v. Pollack</u>, 534 F.2d 964, 973, 175 U.S.App.D.C. 227, <u>cert</u>. <u>denied</u>, 429 U.S. 924 (1976) (Lumbard, J., sitting by designation):

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure. <u>See</u>, e.g. <u>United States v. Elmore</u>, 423 F.2d 775, 779 (4th Cir. 1970); <u>United States v. Deutsch</u>, 373 F.Supp. 289, 290-91 (S.D.N.Y. 1974).

<u>See</u> <u>also</u>, <u>Gorham v. Wainwright</u>, 588 F.2d 178, 180 (5th Cir. 1979); <u>Grant v. Alldredge</u>, 498 F.2d 376, 381-82 & n.5 (2d Cir. 1974); <u>Clay v. Black</u>, 479 F.2d 319, 320 (6th Cir. 1973) (per curiam); <u>Hamric v. Bailey</u>, 386 F.2d 390, 393 (4th Cir. 1967); <u>Ashley v. Texas</u>, 319 F.2d 80, 85 (5th Cir.),

cert. denied, 375 U.S. 931 (1963).

Significantly, our pre-trial motion does not call upon the Court to overturn a conviction or to weigh such questions as materiality and prejudice in retrospective review of a trial record, the usual vantage of the appellate decisions. See United States v. Five Persons, 472 F.Supp. 64, 68 (D.N.J. 1979). Rather, the Court must prospectively decide under Brady whether "the subject matter of the [specific] request is material, or indeed if a substantial basis for claiming materiality exists." United States v. Agurs, 427 U.S. 97, 106 (1976). Furthermore, the Court must also prospectively decide under Rule 16(d)(1)(C) of the Federal Rules of Criminal Procedure whether the request embraces matter which is "material to the preparation of [the] defense". As to Rule 16(a)(1)(C), one court recently noted the special materiality of impeaching information:

> . . . aside from outright exculpatory items, it is difficult to imagine information more material to the preparation of the defense than credibility items for critical or major government witnesses.

United States v. Five Persons, 472 F.Supp. 64, 67 (D.N.J. 1979).

Combining the force of Brady and Rule 16(a)(1)(C), we have a powerful case for pre-trial disclosure. United States v. Thevis, 84 F.R.D. 47 (N.D. Ga. 1979) (excellent discussion). Numerous District Courts have ordered such discovery both before and after the 1975 amendments which further liberalize Rule 16. E.G., United States v. Thevis, 84 F.R.D. 47 (N.D. Ga. 1979); United States v. Five Persons, 472 F.Supp. 64 (D.N.J. 1979); United States v. Goldman, 439 F.Supp. 337, 349 (S.D. N.Y. 1977); United States v. Dillard, 419 F.Supp. 1000, 1001 (N.D. Ill. 1976); United v. Deutsch, 373 F.Supp. 289, 290-91 (S.D. N.Y. 1974); United States v. Quinn, 364 F.Supp. 432, 440 (N.D. Ga. 1973); aff'd. on other grounds, 514 F.2d 1250 (5th Cir. 1975); United States v. Houston, 339 F.Supp. 762, 764 (N.D. Ga. 1972); United States v. Eley, 335 F. Supp. 353, 355-58 (N.D. Ga. 1972); United States v. Ahmad, 53 F.R.D. 186, 193-94 (M.D. Pa. 1971; United States v. Gleason,

265 F.Supp. 880, 884-87 (S.D. N.Y. 1967).

Indeed, even when the favorable information takes the form of a witness statement otherwise protected from pre-trial discovery by the Jencks Act (18 U.S.C. Sec. 3500), the prosecution must nonetheless disclose it as far in advance of trial as Due Process may practically require for the defense to make fair use of it. E.G. United States v. Narciso, 446 F.Supp. 252, 270-71 (E.D. Mich. 1977); United States v. Houston, 339 F.Supp. 762, 765-66 (N.D. Ga. 1972); United States v. Eley, 335 F.Supp. 353, 358 (N.D. Ga. 1972); United States v. Gleason, 265 F.Supp. 880, 887 (S.D. N.Y. 1967); see United States v. Harris, 458 F.2d 670, 677 (5th Cir.), cert. denied, 409 U.S. 888 (1972). Compare United States v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979).

In conclusion, Defendant seeks meaningful preparation for cross-examination and, if necessary, for the presentation of defense evidence. He offers avoidance of both the trial conundrums arising from Brady too little, Brady too late, as well as the spectre of collateral attacks arising from the same. See United States v. Five Persons, 472 F.Supp. 64, 68 (D.N.J. 1979). Pre-trial disclosure should be required in the interest of justice.

    C.    The Scope of Impeachment

Then, we must answer the question of what disclosure is in order. Wigmore has defined the process of impeaching testimonial evidence as the general logical process of explaining or discrediting the assertions of a witness by reference to the "human element in [the] testimony":

> But A's assertion that a street lamp was lighted at a given time or place is generally of a piece with hundreds of thousands of former evidential data, viz. it is a human assertion, resting for credit on human qualities. The human element in this testimony is an element in common, running through the vast mass of prior human testimonies. And even though human beings differ, yet their differences also are generic, each on a vast scale. Moral character, bias, experience, powers of perception in light and dark, powers of memory after a lapse of time, susceptibility to falsify under torture, -- these and other qualities have been under observation in so many thousands of instances under varying conditions that we have built up generalizations (more or less correct or uniform), which pass for general truths (or

at least, as working guides) on those subjects. In short, we possess <u>a fund of general principles</u>, applicable to specific instances of this class of evidence, and almost totally lacking for specific circumstantial evidence.

3 Wigmore, <u>Evidence</u>, Section 587 at 362-63 (3d Ed. 1940)
(emphasis in original)

Thus, we are concerned with these "general principles" of crediting and discrediting witnesses.

McCormick has identified "five main lines of attack upon the credibility of a witness":

There are five main lines of attack upon the credibility of a witness. The first, and probably the most effective and most frequently employed, is an attack by proof that the witness on a previous occasion has made statements inconsistent with his present testimony. The second is an attack by showing that the witness is biased on account of emotional influences such as kinship for one party or hostility to another, or motives of pecuniary interest, whether legitimate or corrupt. The third is an attack upon the character of the witness. The fourth is an attack by showing a defect of capacity in the witness to observe, remember or recount the matters testified about. The fifth is proof by other witnesses that material facts are otherwise than as testified to by the witness under attack.

McCormick, <u>Evidence</u> Sec. 33 at 66 (2d Ed. 1972)

As can be seen, impeachment is not limited to discrediting character for veracity. 3 Wigmore, <u>Evidence</u> Section 874 at 362 n.1 (3d Ed. 1940). Nor is the process limited to cross-examination. Extrinsic evidence showing bias, for example, may be adduced. <u>E.g.</u>, <u>Johnson v. Brewer</u>, 521 F.2d 556, 562 & n.13 (8th Cir. 1975); <u>United States v. Lester</u>, 248 F.2d 329, 334 (2d Cir. 1957).

With this introduction aside, we can turn to the specifics of defendants' motion.

## II.

## <u>SPECIFIC REQUESTS FOR DISCLOSURE</u>

To help focus the duty of disclosure, the defendant is making specific requests for disclosure, itemizing likely sources of impeaching information within the knowledge or reach of the prosecution. See <u>United States v. Agurs</u>, 427 U.S. 97, 106 (1976); <u>Note</u>, <u>The Prosecutor's Duty to Disclose after United States v. Agurs</u>, 1977 U.Ill.L.F. 690, 696, 698, 705, 709, 718.

1.      Defendants' request for information regarding prior felony convictions and juveniles adjudications invokes a classic avenue of impeachment and appears directly within the ambit of Rule 609 of the Rules of Evidence for United States Court and Districts (hereafter referred to as Federal Rules of Evidence).  The Conference Committee report to that Rule speaks in terms of ". . . the need for the trier of the fact to have as much relevant evidence on the issue of credibility as possible."  H.R.Rep. 93-1597, 93d Cong., 2d Sess. 9 (1974).  Accord, Lewis v. United States, 408 A.2d 303, 307 (D.C.App. 1979).  See generally, Beaudine v. United States, 368 F.2d 417, 421-22 (5th Cir. 1966).  The inclusion of "guilty verdicts" in the request results from recent decisions authorizing their use, even though not reduced to judgment, for purposes of impeachment.  United States v. Caraday, 466 F.2d 1191 (9th Cir. 1972) (per curiam); United States v. Rose, 526 F.2d 745 (8th Cir.), cert. denied, 425 U.S. 905 (1976).  Disclosure is plainly in order.  E.G., United States v. Quinn, 364 F.Supp. 432, 445 (N.D. Ga. 1973), aff'd on other grounds, 514 F.2d 1250 (5th Cir. 1975); United States v. Moceri, 359 F. Supp. 431, 435 (N.D. Ohio 1973); United States v. Leta, 60 F.R.D. 127, 131 (M.D. Pa. 1973); United States v. Houston, 339 F.Supp. 762, 766 (N.D. Ga. 1972); United States v. Eley, 335 F.Supp. 353, 358 & n.4 (N.D. Ga. 1972); United States v. Jepson, 53 F.R.D. 289, 291-92 (E.D. Wis. 1971); United States v. Leichtfuss, 331 F.Supp. 723, 736 (N.D. Ill. 1971); United States v. Tanner, 279 F.Supp. 457, 471-72 (N.D. Ill. 1967); Lewis v. United States, 408 A.2d 303 (D.C. App. 1979) (excellent discussion).  Discovery should also extend to production of any and all so-called "rap sheets" for the witness.  United States v. Leichtfuss, 331 F.Supp. 723, 736 (N.D. Ill. 1971); see United States v. Alvarez-Lopez, 559 F.2d 1155 (9th Cir. 1977).

Pre-trial disclosure should be ordered so that defense counsel can conduct appropriate investigation and interviews and otherwise prepare for trial.  It should be ordered so that counsel can participate intelligently in jury selection, present a knowledgeable opening statement and, of course,

undertake effective cross-examination. And, it should be ordered so that the Court and jury are spared unnecessary delays at trial. The plain, practical consideration of judicial economy have been ably described in McCarthy, "Pre-Trial Discovery in Federal Court", Chapter 3b, <u>Illinois Criminal Practice</u> (2d Ed. 1974), at 3b-39:

> In moving for the criminal records of government witnesses, trial judges should be reminded of the trial difficulty and delay which might otherwise arise where the motion is denied. Assume the government witness did have a criminal record, one usable to impeach. Assume further this fact became known to defense counsel during trial. (Were this fact, known to the prosecutor, not brought to counsel's attention, <u>Brady v. Maryland</u>, <u>supra</u>, could be expected to be urged at a subsequent appeal or post-conviction proceeding when and if this information does become known). To properly impeach, counsel should inquire of the witness if he is the same Joe James who was convicted of the crime of, say, robbery on February 5, 1971, in the Circuit Court of Cook County. If, however, counsel does not have the information required - <u>i.e.</u>, the nature of the offense, the conviction date and the court -- his impeachment may be formally incomplete and possibly precluded. More drastically, assume the witness does not recall or denies the past conviction[.] [I]n order to impeach[,] Defendant's counsel would need to introduce in evidence proof of the prior conviction in the form of a certified record of the conviction. Obtaining this evidence might well delay the trial.

In recognition of such problems, some District Courts now routinely require pre-trial disclosure of criminal records of government witness by standing discovery order or otherwise. <u>E.g.</u>, <u>United States v. Campagnuolo</u>, 592 F.2d 852, 857 n.1 (5th Cir. 1979) (Southern District of Florida Standing Discovery Order); <u>United States v. Leichtfuss</u>, 331 F.Supp. 731, 736 (N.D. Ill. 1971) (Presiding Judge's standard practice).

      2.      The Federal Rules of Evidence also give the Court discretion to permit a defendant cross-examination of a witness as to specific instances of misconduct, so-called "bad acts", even though such behavior does not amount to felony conviction, if the evidence impeaches the witness' truthfulness. Rule 608(b), Federal Rules of Evidence. This enactment appears to alter prior law in several Circuits. 3 Weinstein's <u>Evidence</u>, Par. 608[5] at 608-25 (1976). The purpose of such testimony, incidentally, is specifically to attack the witness' character and not to establish bias, interest, or prejudice. <u>See</u> McCormick, <u>Evidence</u>, Section 52 at 83 (2d Ed. 1972). Since this is

permissible area of inquiry, the prosecution must disclose to the defense any behavior by its witnesses which arguably constitutes such "bad acts".

    3.    The government has an institutional obligation to disclose any and all consideration which it has held out to a witness or which the witness subjectively hopes for or anticipates since such consideration directly gives rise to the inference of bias or interest. See generally, United States v. Mayer, 556 F.2d 245, 248 (5th Cir. 1977) (cross-examination of a prosecution witness who has had prior dealings with the prosecution or other law enforcement officials "ought to be given the largest possible scope"; conviction reversed). A common example of such matter which must be disclosed to the defense is the making of promises or the holding out of other inducement for a witness to cooperate and testify against the defendant. E.g., Annunziato v. Manson, 566 F.2d 410 (2d Cir. 1977); United States v. Sanfilippo, 564 F.2d 176 (5th Cir. 1977); Boone v. Paderick, 541 F.2d 447 (4th Cir. 1976); United States v. Tashman, 478 F.2d 129 (5th Cir. 1973); United States v. Harris, 462 F.2d 1033 (10th Cir. 1972). In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court made plain that this duty is an affirmative one which the government must discharge responsibly and that the ignorance of one prosecutor as to the promises made to a government witness by another prosecutor does not excuse the failure to disclose.

In the instant case, the prosecution is obliged to exercise due diligence to determine what consideration, broadly defined, it has offered to its witnesses, or bestowed upon them or which they hope or expect and to disclose this impeaching information to determine what consideration, broadly defined, it has offered to its witnesses, or bestowed upon them or which they hope or expect and to disclose this impeaching information to the defense. The obligation includes the total compensation or benefits paid to or expected by each witness, e.g., United States v. Leja, 568 F.2d 493 (6th Cir. 1977); United States v. Partin, 493 F.2d 750, 757-60 (5th Cir. 1974); see United States v. Antone,

603 F.2d 566, 569-70 (5th Cir. 1979) (attorney's fees paid by state law enforcement officers cooperating in the investigation), any beneficial treatment in the taxes, e.g., 26 U.S.C. Sections 7122 and 7623, or administrative realms, e.g., United States v. Wolfson, 437 F.2d 862, 874-5 (2d Cir. 1970), any assistance in the business world, e.g., United States v. DiCarlo, 575 F.2d 952, 958-60 (1st Cir.) cert. denied, 439 U.S. 834 (1978); any assistance in avoiding prosecution by other authorities, e.g., Azbill v. Pogue, 534 F.2d 195, 196 (9th Cir. 1976); any immunity grants, e.g., United States v. Dillard, 419 F.Supp. 1000 (N.D. Ill. 1976), omission from being named in an indictment as an unindicted co-conspirator, relief from forfeiture, e.g., United States v. Parness, 408 F.Supp. 440, 444-45 (S.D. N.Y. 1975), assistance in bonding out of custody, e.g., United States v. Garza, 574 F.2d 298, 301-02 (5th Cir. 1978), placement in protective custody, e.g., United States v. Librach, 520 F.2d 550 (8th Cir. 1975), cert. denied, 429 U.S. 939 (1976), and status as an informer, e.g., United States v. Mele, 462 F.2d 918 (2d Cir. 1972). These examples, of course, are only intended to make the principle clear and do not exhaust the range of "consideration".

To be clearer, the prosecution should disclose such sources of bias, motive or interest as potential financial reward by the United States, Wheeler v. United States, 351 F.2d 946 (1st Cir. 1965), or through its efforts, United States v. McCrane, 547 F.2d 204 (3d Cir. 1976) (per curiam); Patriarca v. United States, 402 F.2d 314, 319 (1st Cir. 1968), or, on the other hand, the potential of civil tax liability to the United States -- even though no promises of consideration or compromise may have been made. Although such inducements are, of course, relevant, a witness' expectations or hopes are what tells. United States v. Mayer, 556 F.2d 245, 249-50 (5th Cir. 1977); Farkas v. United States, 2 F.2d 644, 647 (6th Cir. 1924), cited with approval in, Alford v. United States, 282 U.S. 687, 693 (1931).

In addition to promises of consideration which might promote a witness' cooperation with

the government, the accused is entitled to be advised of any matter which might cause a witness to color his testimony in favor of the government out of fear or interest in self-preservation. The government must disclose both the stick and the carrot. E.g., United States v. Sutton, 542 F.2d 12391 (4th Cir. 1976) (threat by FBI agent to prosecute witness intended to induce witness' cooperation).

With regard to the stick, sometimes it is overlooked that evidence of a witness' wrongdoing, even though not amounting to a felony conviction or comparable evidence of moral turpitude or bad character, may nonetheless be adduced when relevant to show the bias or self-interest of the witness. McCormick, Evidence Section 40 at 78-80 (2d Ed. 1972); United States v. Alvarez-Lopez, 559 F.2d 1155 (9th Cir. 1977). Typical of this category is information concerning the witness' possible vulnerability to prosecution, parole or probation revocation, or other sanction by the government.

In United States v. Bonnano, 430 F.2d 1060 (2d Cir. 1970), cert. denied, 400 U.S. 964 (1971), the Court condemned the government's failure to disclose an outstanding indictment against its witness since the pendency of the charge would have shown "possible motivation of the witness to testify favorably for the government." 430 F.2d at 1062. Similarly, in United States v. Padgent, 432 F.2d 701 (2d Cir. 1970), the Court reversed the defendant's conviction because his counsel had been denied the right to question a government witness on cross-examination with regard to the witness' vulnerability to future indictment for bail jumping. See also, United States v. Crumley, 565 F.2d 945, 949-50 (5th Cir. 1978); United States v. Gerard, 491 F.2d 1300, 1304 (9th Cir. 1974).

In Davis v. Alaska, 415 U.S. 308 (1974), the Supreme Court of the United States granted habeas corpus relief to a defendant who was precluded from similar inquiry. In Davis the Court held that the petitioner's constitutional right of confrontation had been denied when the State of Alaska, out of solicitude to maintain confidentiality of juvenile convictions, successfully prevented cross-

examination as to the probationary status of an important witness against the accused. Since the witness might have colored his story in favor of the government to avoid the possibility of revocation, the defendant was entitled to prove this source of possible bias or interest. See also, Meeks v. United States, 163 F.2d 599, 600 (9th Cir. 1947) (semble) (parole status). In a vigorous opinion by Chief Justice Burger, the Davis Court underscored the necessity and legitimacy of searching out possible biases, prejudices and ulterior motives of the witness:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perception and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness . . . A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to the issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence, Section 940, p. 775 (Chadbourne rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Greene v. McElroy, 360 U.S. 474, 496 (1959).

415 U.S. at 316-17 (footnote omitted).

Of course, other motivations besides fear of criminal sanctions are also material. For example, a threat to revoke citizenship, see, e.g., United States v. Haderlein, 118 F.Supp. 346 (N.D. Ill. 1953), or to deport the witness would surely qualify. Even without threats, so would the mere fact of a witness' imprisonment since he might well be "affected by fear or favor growing out of his detention". Alford v. United States, 282 U.S. 687, 693 (1931). See also, United States v. Croucher, 532 F.2d 1042, 1044-46 (6th Cir. 1976) (refusal to permit cross-examination of informer, a key government witness, as to prior arrests, other than ones resulting in convictions of felonies or misdemeanors involving moral turpitude; conviction reversed); United States v. Garcia, 531 F.2d 1303, 1306-07 (5th Cir.), cert. denied, 429 U.S. 941

(1976) (evidence of a witness' mere arrest by the government without further prosecution might well furnish impeaching evidence of bias or prejudice); Hart v. United States, 565 F.2d 360 (5th Cir. 1978) (semble); United States v. Gurney, 393 F.Supp. 683 (M.D. Fla. 1974) (prosecution's use of legal process to compel the attendance of witnesses for the purpose of pre-trial interview prohibited because it is unauthorized and it puts the witness in a compromising position conducive to involuntary cooperation with the government); Smaltz, Tactical considerations for Effective representation During a Government Investigation, 16 Amer. Crim. L. Rev. 383, 398-403 (1979) (prosecution's requiring a witness to proffer and give it a preview of testimony as a condition precedent to granting him statutory immunity condemned as unauthorized and having "dramatic potential for influencing and shaping a witness' recollection and testimony to meet the government's needs"). Sticks, real or only feared, appear in many shapes.

     5.     The existence and identification of each occasion on which the witness has testified or otherwise narrated relative to the facts should be disclosed so that defendant can, for example, order transcripts of testimony for use in cross-examination or investigate sources of extrinsic impeachment. McCormick points out:

> When a witness testifies to the facts material in a case the opponent may have available proof that the witness has previously made statements that are inconsistent with his present testimony. Under a modern view of the hearsay rule, these previous statements would be admissible as substantive evidence of the fact stated.

McCormick, Evidence Section 34 at 67 (2d Ed. 1972).

See also, Rules 801(d)(1) and 806, Federal Rules of Evidence. If the government has available information which may lead to proof of prior inconsistent statements or other evidence helpful to the accused, fundamental fairness requires that it be turned over to the defense without further

delay.¹  Davis v. Heyd, 479 F.2d 446 (5th Cir. 1973) (federal habeas corpus relief granted to state prisoner where undisclosed prior statements of prosecution witness specifically corroborated defense theory and contradicted his trial testimony).  See also, Monroe v. Blackburn, 607 F.2d 148 (5th Cir. 1979); United States ex rel. Butler v. Maroney, 319 F.2d 622 (3d Cir. 1963).  See generally, United States v. Barash, 365 F.2d 395, 400-01 (2d Cir. 1966) (cross-examination by use of prior statements).

As the Ninth Circuit reminded us in a similar context:

> We agree with the trial court that [the witness'] statement was in part exculpatory material and should have been turned over to the defense.  The fact that the Government concluded in good faith that the evidence would not be very helpful to Miller does not excuse its failure to disclose the statement.  The prosecutor is not merely an advocate for a party; he is also an administrator of justice.  Considering the vast investigatory resources and powers at the Government's disposal, an elemental sense of fair play demands disclosure of evidence that in any way may be exculpatory.  If the Government, upon request by the accused, has serious doubts about the usefulness of the evidence to the defense, the Government should resolve all doubts in favor of full disclosure.  Such a rule appears particularly appropriate since disclosure could cause no harm to the Government while suppression could very well prejudice the defendant.

United States v. Miller, 529 F.2d 1125, 1128 (9th Cir. 1976) (emphasis in original) (footnote omitted).

Thus, the government should identify the sources of information which will allow defendant to make his own pursuit of impeaching information.  Cf., Britt v. North Carolina, 404 U.S. 226 (1971)

---

¹This motion is not directly concerned with prior statements which may be producible only at the time of a witness' testimony because of the "Jencks Act", 18 U.S.C., Section 3500, or because used to refresh the recollection of a witness. Rule 612, Federal Rules of Evidence; see Bradford v. United States, 271 F.2d 58 (9th Cir. 1959).  Rather it seeks early disclosure of Jencks material only to the extent required by due process, E.g., United States v. Narciso, 446 F.Supp. 252, 270-71 (E.D. Mich. 1977); United States v. Houston, 339 F.Supp. 762, 765-66 (N.D. Ga. 1972); United v. Eley, 335 F.Supp. 353, 358 (N.D. Ga. 1972); United v. Gleason, 265 F.Supp. 880, 887 (S.D. N.Y. 1967) and primarily seeks identification of statements not solely "in the possession of the United States", 18 U.S.C., Section 3500(a) and (b), so that they may be obtained from other sources.

(indigent defendant entitled to free transcript, or adequate transcript substitute, of prior trial).

      6.      This request takes the previous request one step further. If the witness is an informer, accomplice, or co-conspirator, defendant should also be advised of all occasions, known to the government, on which the witness has previously testified even if the government discerns no relation to the case at hand. As to crucial and inherently suspect witnesses, the defendant must have the greatest possible latitude in investigation as well as in cross-examination. See, e.g., United States v. Mayer, 556 F.2d 245, 248-49 (5th Cir. 1977); United States v. Alvarez-Lopez, 559 F.2d 1155, 1160 (9th Cir. 1977). The case of Johnson v. Brewer, 521 F.2d 556 (8th Cir. 1975) clearly illustrates this point.

In Johnson v. Brewer, supra, the court granted federal habeas corpus relief to a prisoner who had been convicted on the testimony of a paid informer. At his Iowa state trial, petitioner offered to prove that the witness had lied and attempted to frame a defendant in another drug trial in Michigan. In light of the witness' modus operandi as an undercover agent, of his career status as an informant which depended on a continuing relationship with state authorities, of the possibilities of bias arising from the fact of the prior lie and the career status, and of the perceived unreliability of informer witnesses, the Court of Appeals concluded the jury was entitled to know of the Michigan testimony. The exclusion of the evidence amounted to a denial of due process.

Similarly, failure to grant the disclosure requested herein may amount to a denial of due process.

The same capacity to assess all prior testimony of expert witnesses is also necessary if there is to be true confrontation and cross-examination. See, McConnell v. United States, 393 F.2d 404 (5th Cir. 1968) (defendant entitled to impeach handwriting expert by showing mistaken

identification at another, albeit related, trial).

      7.      If a government employee serves as a prosecution witness, the defendant is entitled to have access to his or her government personnel file in order to ascertain whether there is information within it which could be of an impeaching nature. United States v. Deutsch, 475 F.2d 55, 57-58 (5th Cir. 1973). Similarly, in United States v. Morell, 524 F.2d 550, 552-55 (2d Cir. 1975), the Court of Appeals held that defense counsel were entitled to impeaching information in the confidential file of an informant witness. See also, United States v. Beekman, 155 F.2d 580 (2d Cir. 1946). Law enforcement witnesses are, of course, not immune from this principle. In United States v. Garrett, 542 F.2d 23 (6th Cir. 1976) the court of Appeals reversed a drug distribution conviction in which the defendant had been denied both access to disciplinary records of the chief witness, a police officer who had been suspended from duty for refusal to take a urine test to see whether he had used hard drugs, and also had been restricted in cross-examining the officer as to why he had been suspended. See also, United States v. Hitchmon, 609 F.2d 1098 (5th Cir. 1979) (Trial Court prohibits cross-examination of government witnesses concerning an internal DEA investigation into the possibility that two of its agents had given perjured testimony in an effort to obtain a conviction; conviction reversed; cf., District of Columbia v. Clawans, 300 U.S. 617, 630-31 (1937) ("Common experiences teaches us that the testimony of [private railroad police or detective], especially when uncorroborated, is open to the suspicion of bias. . ."). The personnel and internal investigation files of all law enforcement witnesses should be disclosed to defense counsel. See, Renshaw v. Ravert, 82 F.R.D. 361, 363-64 (E.D. Pa. 1979) (complaints directed against defendant police officers and disciplinary or internal police investigation and review of those complaints discoverable from official personnel files or records in civil damage action since these are matters which affect the credibility of these witnesses or which might be used in cross-examining or

impeaching them at trial).  See generally, Sherman, Enforcement Workshop:  Obtaining Access to Police Internal Investigation Files, 15 Crim.L.Bull. 449 (1979); Brenner, Criminal Discovery of Citizen Complaints Against Law Enforcement Personnel in 2 Seventeenth Annual Defending Criminal Cases:  a Practical Look at Current Developments in Criminal Law 1145 (PLI 1979).  As pointed out by one commentator, "This information is extremely valuable to the criminal or civil practitioner in thoroughly investigating and preparing any cases where the credibility of a police officer is at issue."  Snyder, Discovery of Police Personnel Files in Criminal Proceedings, 52 Fla. Bar J. 119, 122 (1979).

For purposes of the present motion, Defendant's request is aimed at files which the government has access to.  As to personnel files (government or otherwise) and internal investigation files, all should be disclosed on the authority of the cases cited above.  As to the government files generally, all should at least be identified so that specific and appropriate motions or process can then be addressed to them.

8. This item is a catch-all.  The request embraces information which impeaches the witness' competency and his capacity and opportunity to observe, remember, recall and narrate as well as his character for veracity and his partiality (prejudice, bias, motive, interest and corruption). Thus, specifically the government cannot suppress, and must disclose, evidence of "basic mental trouble: suffered by a witness.  Wiman v. Powell, 293 F.2d 605, 606 (5th Cir. 1961); Powell v. Wiman, 287 F.2d 275, 278-79 (5th Cir. 1961).  See generally, United States v. Partin, 493 F.2d 750, 762-64 (5th Cir. 1974).  Further, for a bizarre example, if the government knows that hypnosis or hypnotic age regression have been used in the preparation of its witnesses, defendant is entitled to pre-trial disclosure of the facts.  United States v. Miller, 411 F.2d 825 (2d Cir. 1969); Emmert v. Ricketts, 397 F.Supp. 1025 (N.D. Ga. 1975).  Such methods are not unknown.  Likewise, if the

government knows that "truth serum", polygraph examination or other so-called "lie detection" techniques have been used in the preparation of witnesses, it must disclose the facts, United States v. Hart, 334 F.Supp. 522 (E.D. N.Y. 1971), at once so that the defendant can employ expert advice to analyze the impact upon the witnesses. Any argument that evidence, such as polygraph results, is inadmissible only buttresses the argument for discoverability for purposes of fairly gauging the effect of such unscientific methods. The same requirement of disclosure, of course, would be true if the government knew a witness had an appetite for narcotic drugs at the time of the relevant events, see, United States v. Fowler, 465 F.2d 566, 570-74 (D.C. Cir. 1972), or during trial, see, Wilson v. United States, 232 U.S. 563, 568 (1914), or even a distaste for the defendant. See, United States v. Haggett, 438 F.2d 893, 897 (9th Cir. 1971). Impeachment comes in many forms and to the extent that the government recognizes it -- either by virtue of the flagging in this motion or otherwise -- it should not be suppressed.

9.   And, if the government seeks to make its proof against defendant by introducing the declarations of non-witnesses, the defendant is still permitted to impeach the declarant. Rule 806, federal Rules of Evidence. Indeed, such statements in the nature of common law hearsay authorize impeachment in the same way as if the declarant were offered on the witness stand. E.g., People v. Mayfield, 23 C.A.3d 236, 241-44, 100 Cal. Rptr. 104 (5th Dist. 1972) (prosecution witness used to admit former identification of defendant by non-witness declarant; no cross-examination of testifying witness allowed for purpose of showing possible bias, interest, motive or unreliability of absent declarant; conviction reversed); Am-Cal Investment Co. v. Sharlyn Estates, Inc., 255 C.A.2d 526, 541-44, 63 Cal. Rptr. 518 (4th Dist. 1967) (hearsay declaration of trust company admitted on behalf of plaintiff; refusal to admit defense testimony of inconsistent statements by company's agent

for the purpose of impeaching the hearsay testimony; prejudicial error)[2]; United States v. Glenn, 473 F.2d. 191, 195 & n.1 (D.C. Cir. 1972) (suggesting that under proposed Rule 806 an excited utterance, admitted as hearsay exception under proposed Rule 803(2), could be attacked by proof of the high percentage of alcohol in the declarant's blood contemporaneous to her making the statement). See generally, 3 Wigmore, Evidence Section 884 at 376-77 (3d Ed. 1940); McCormick, Evidence, Section 37 at 73-74 (2d Ed. 1972).

The principle is simple. The Advisory Committee's Note to Rule 806 puts it this way:

> "The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. See Rules 608 and 609 . . ."

Accordingly, "in fairness" the prosecution should be required to disclose the requested impeaching information.[3]

---

[2]Defendant has cited several California examples because they are illustrative and also because of that State's long experience under California Evidence Code, Section 1202 which is similar to Rule 806. See Advisory Committee's Note to Rule 806, Federal Evidence Code.

III.

CONCLUSION

The right of counsel for the accused to confront, cross-examine and impeach is cherished and remains "the principal means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974) (Burger, C.J.). Our specific requests for impeaching information are highly material to defense counsels' investigation and preparation for precisely this venerable mission. See generally, United States v. Opager, 589 F.2d 799 (5th Cir. 1979). Therefore, the Constitution requires the prosecution to disclose it or to show good reason why not. United States v. Agurs, 427 U.S. 97, 106 (1976); see, Brady v. Maryland, 373 U.S. 83 (1963). These fundamental precepts require, we submit, that the Motion be granted.

Respectfully submitted,

DONALD J. MCGUIRE, Defendant
by and through his attorneys,
KOMIE AND ASSOCIATES

By:    /s/ Stephen M. Komie
Komie and Associates
One North LaSalle Street, Suite 4200
Chicago, Illinois 60602
312/263-2800

---

[3] Nor is the "Jencks Act" a bar since it only bans the early production of "statements" and, further, such statements must be ones "made by a Government witness or prospective Government witness". 18 U.S.C. Section 3500(a). There is little need, after all, to protect a "witness" who will not be called to the stand to testify. Once the hearsay declaration has been introduced both the spirit of the Jencks Act and regard for proper "standards for the administration of justice in the federal courts", see, Jencks v. United States, 353 U.S. 657, 668 (1957), would compel immediate production of all prior and subsequent statements made by the declarant touching the subject matter of the declaration. In the case of non-witness declarants, there is simply no reason for delaying production until the last minute.